## STANDISH *vs.* WINDHAM.

R. M. became chargeable as a pauper to the town of W. she then residing therein. The sons of the pauper being able to support her, and being called on for the purpose, refunded to said town the amount thus expended, and also gave an obligation, " to support her as long as they were able." After which she was supported by the sons *in another town* for a period of five successive years. It was *held* that by such residence she gained a legal settlement in the latter town, notwithstanding the taking and holding of said obligation by the town of W. and the support rendered by the sons in pursuance of it.

In this action, which was *assumpsit* to recover certain expenses incurred for the support of *Rosanna Mayberry*, it was admitted that she had once a legal settlement in the town of *Windham*, and the only question in the cause was, whether she had since gained one in *Standish* by a residence there for more than five successive years. It was proved that she had resided in the latter town ever since *Nov.* 1824 ; but it was contended that during that time, or a part of it, she had directly or indirectly received supplies as a pauper from said town of *Standish* or from the town of *Windham*. On this point there was much evidence before the jury on both sides ; and among the rest, it appeared that, in the fall of 1824, *Rosanna Mayberry*, then residing in *Windham*, became chargeable as a pauper, and that the town of *Windham* paid to the son-in-law of said pauper, five dollars for her support. The sons of the said pauper, then residing in the town of *Standish*, being of sufficient ability to maintain their mother, were then called on by the town of *Windham* to repay the amount thus expended for her, which they did ; and also gave to *Windham* an obligation whereby

they engaged to support the said *Rosanna* as long as they were able; and it appeared that she had continued to live in the family of one of the sons since she became a resident in *Standish.*

All the evidence in the cause was submitted to the ` jury for their consideration; the *Chief Justice,* before whom the cause was tried, at the same time instructing them that, the aid of the sons in giving said writing, and of the town of *Windham* in receiving it, in connexion with the pauper's residence in the family of one of said sons, did not, in legal contemplation, amount to the furnishing of supplies, directly, or indirectly, by the town of *Windham* to the pauper.

The jury having returned a verdict in favour of the defendant town, the case was reserved for the opinion of the whole Court, on the correctness of the foregoing instructions. ·

*Longfellow* and *Boyd,* for the plaintiffs.

The town of *Windham* by coercing the sons of the pauper to give a bond to maintain her, indirectly furnished her support, and therefore her continued residence in *Standish* for five years, could not operate to fix her settlement in that town. If one town can send its paupers into another town, and enable them to gain a residence as contended for by the defendants, it would seem to be a palpable perversion of the statute. In this case *Rosanna Mayberry* was sent to *Standish* as *a pauper,* and was supported there by her sons as *a pauper,* they being answerable over to the town of *Windham.* *Watson v. Cambridge,* 15 *Mass.* 286; *East-Sudbury v. Waltham,* 13 *Mass.* 460.

*S.* and *W. P. Fessenden,* for the defendants, relied on the case of *Wiscasset v. Waldoborough,* 3 *Greenl.* 388, as decisive of this.

MELLEN C. J. delivered the opinion of the Court.

It is enacted in the second section of the act of 1821, *ch.* 122, " That any person of the age of twenty-one years, who " shall hereafter reside in any town within this State, for the " space of five years together, and shall not during that term " receive, *directly* or *indirectly,* any supplies or support as a

Standish *v.* Windham.

" pauper from *any town*, shall thereby gain a settlement in such " town." The only question in the cause is, whether the pauper, during the five years of her residence in *Standish*, next after her removal from *Windham* into that town, did directly or indirectly receive any supplies or support as a pauper from *any town.* From the facts reported we are clearly of opinion that she did not. The payment of the five dollars by *Windham* was prior to the commencement of the abovementioned term of five years ; and while the pauper resided in *Windham ;* and the sum so paid was repaid, and the obligation given by her sons, before her removal to *Standish.* How can the *protection from expense,* enjoyed by *Windham*, in consequence of the abovementioned bond or contract of indemnity, according to the legitimate use of language, be considered as *expense indirectly incurred* by that town. Suppose the sons had maintained their mother ever since her removal into *Standish*, from a sense of filial obligation and filial affection only ; could *Windham* in that case be deemed to have *indirectly* furnished her supplies as a pauper ? Surely not. Is the case altered by the circumstance of the written obligation, which imposed a superadded duty ? Suppose the pauper were now by some means to become possessed of a handsome property, could the town of *Windham* maintain an action against her, in virtue of the 19th section of said act, and recover the amount of the expenses incurred in her support by her sons, pursuant to their contract with the town ? Surely the question is too plain for further examination. The case of *Watson v. Cambridge* has little resemblance to the present case. It only decides that a bond by one man given to another to indemnify the obligee, who was chargeable with the support of a pauper, did not operate to discharge the town of her last settlement from the obligation to maintain such pauper. The case of *East-Sudbury v. Waltham* seems to have no bearing on the case before us. In *Wiscasset v. Waldoborough*, this Court decided that a bond given to the town of *Waldoborough* to support the pauper could in no view be considered as supplies furnished by the town. We think the instruction of the Judge was correct and of course there must be

*Judgment on the verdict.*